IMG-067                                                   **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4768
_____

FAYAN LIN,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                    Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A097-333-742
Immigration Judge: Frederick Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2010
Before:  MCKEE, <u>Chief Judge</u>, HARDIMAN AND COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 22, 2010)
_____

OPINION
_____

PER CURIAM

Petitioner Fayan Lin, a native and citizen of China, arrived at Chicago O'Hare

International Airport on July 7, 2005.  He provided a sworn statement to an immigration

officer at the airport, claiming that he had come to the United States to work and make

money, and that the Chinese authorities were looking for him and his parents because his

parents practiced Falun Gong. App. 283-87. At the airport, Lin gave his address as 121 Haotong Village, 1012 Tamtao Town, Fujian, China. App. 284. He stated that, after leaving China, he went to Taiwan, and then to Seoul, South Korea, before arriving in Chicago. See id. A written report of the interview was prepared, which Lin reviewed and signed, indicating that his answers were true and correct. App. 287.

On July 14, 2005, an asylum officer conducted a "credible fear interview," during which Lin again alleged that he feared harm in China because of his affiliation with Falun Gong. App. 245-254. He told the asylum officer that he had been arrested on June 9, 2005, beaten, and detained overnight after the Chinese authorities observed him distributing Falun Gong fliers. App. 251-52. Lin said his older sister, who lives legally in the United States, contacted his uncle in Taiwan to make travel arrangements for him to leave China, and he traveled to Taiwan and South Korea before arriving in the United States about one month later. App. 252-53. Lin gave his address before leaving China as 121 Houdong Village, Tantou Town, Changle City, Fujian Province. App. 246.[1]

On July 15, 2005, removal proceedings were initiated against Lin when the former Immigration & Naturalization Service filed a Notice to Appear with the Immigration Court, charging that he was subject to removal pursuant to Immigration & Nationality Act ("INA") § 212(a)(7)(A)(i), 8 U.S.C. §1182(a)(7)(A)(i), as an alien not in possession of a valid entry document. A.R. 376-77. On or about December 20, 2005, and after a change

---

[1] We will rely on this spelling of "Houdong" Village and "Tantou" Town throughout this opinion, as it most frequently appears in the documentary evidence.

of venue to Newark, New Jersey, Lin filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming that he had been persecuted by the Chinese government on account of his practice of the outlawed Falun Gong religion or spiritual movement.[2]

In a statement accompanying his asylum application, Lin stated that he obtained some Falun Gong materials from the internet, which his parents requested he make into pamphlets to distribute to others. App. 298. On June 9, 2004, he went to Wuyi Public Square to distribute Falun Gong pamphlets and he was arrested. See id. He was detained at the local police station, interrogated, beaten, and the authorities refused to give him food. See id. He was released on bond the same evening. See id. On June 12, 2004, three days after his arrest, he went back to the public square to deliver pamphlets to a male friend of his parents but a member of the police seized the pamphlets. See id. He became scared and hid in a small lane, and, after awhile, he telephoned his parents who told him to hide at a relative's home. See id. His parents later contacted him and asked a relative to help him leave China. App. 299. With the help of a smuggler, Lin left China on July 5, 2005. See id. On this asylum application, Lin again gave his address as 121 Sihou, Houdong Village, Tantou Town, Changle City, Fujian Province, and he stated that

_____

[2] Falun Gong is a spiritual movement that blends aspects of Taoism, Buddhism, and the meditative techniques and physical exercises of qigong – a traditional Chinese exercise discipline – with the teachings of its founder. See generally Lin v. Att'y Gen. of U.S., 543 F.3d 114, 117 n.3 (3d Cir. 2008).

3

he had lived at this address from March of 1981 to June 7, 2005. App. 292.

In further support of his asylum application, Lin submitted a copy of an arrest warrant issued for his arrest by the Public Security Bureau of Fuzhou City on June 14, 2004. The warrant listed Lin's address as No. 203 Maiding, Baoshan District, Fuzhou City. App. 280. Lin also submitted his Household Registry, App. 323-329, and he submitted statements from his father and a relative, App. 257-72. He also supplemented the record with a 2006 Congressional Research Service Report to Congress, entitled "China and Falun Gong," which discusses the Chinese government's 1999 crackdown on Falun Gong practitioners and allegations of continued government persecution of some Falun Gong adherents. App. 161-73.

Lin conceded removability as charged, and a hearing on the merits of his asylum application was held on February 6, 2007. At the hearing, Lin testified that from 2000 until 2003 he lived with his parents at the 121 Houdong Village, Tantou Town, Changle City address. App. 109-10.[3] From 2003 until some time in 2004, he rented a place at 128 Mei Ding village in the Chunshan District of Fuzhou City, where he was employed. See id. at 108. He returned to his parents' home at 121 Houdong Village in Changle City in 2004, which is where he lived until he left for the United States. See id. at 110.

Lin further testified that he was arrested once on June 9, 2004 by Chinese authorities for helping his parents distribute Falun Gong pamphlets to co-workers. See id.

---

[3] In the hearing transcript, Lin's home address appears as "121 Xo Dong village, Tang Tou town," App. 110. This appears to be a phonetic spelling.

4

at 114, 122. He got the Falun Gong materials through his friend, Lin Qiu, who obtained the information from the internet. See id. at 118-20. After he was arrested, he was taken to the police station, where he was detained until he was released that night. See id. at 124-25. While detained, he was threatened with further detention by the authorities and not allowed to eat. See id. at 126. After being released from detention, Lin stayed at home until June 12, 2004, when he again went to the public square to deliver pamphlets to his aunt. See id. at 129-30. The police appeared and arrested his aunt and he ran away and hid until it became dark. See id. at 130. Then he telephoned his parents, who told him to stay with a friend instead of returning home. See id. After asking his parents to help him leave the country, he left China on June 17, 2004, lived in Taiwan for a year, and arrived in the United States on July 7, 2005. See id. at 130-31. Lin testified that the authorities in China issued an arrest warrant for him on June 14, 2004, because they had evidence indicating he was a Falun Gong practitioner. See id. at 131-32.

On cross-examination, Lin testified that he only stayed in Taiwan for several days rather than a year, and he arrived in the United States on July 7, 2004. See id. at 133. When asked to explain his earlier testimony that he lived in Taiwan for a year after his arrest, Lin stated that he was nervous and his mind had gone "blank." See id. at 134. Counsel for the government pointed out Lin's testimony that he left China on June 17, 2004, which contradicted his asylum application, wherein he stated that he left China on July 5, 2005. When asked to explain, Lin again stated that his mind had gone "blank."

5

See id. at 134-35.

Counsel for the government also asked Lin if he had ever lived at 203 Mei Ding, Chun Shan District, in Fu Zhou City, the address listed on the arrest warrant. See id. at 139.[4] Lin answered that he lived at this address approximately ten years ago, and his Household Registry and identification card did not reflect that because it was his relative's address. See id. at 139-40. When asked to explain why he failed to mention in his asylum application that he had lived at this address, Lin responded that he did not include the information because he did not think it was important. See id. at 141-42. Counsel for the government continued his cross-examination of Lin as follows:

> Q. Well, sir, it's very important because the arrest warrant that you submitted indicates that you lived at the 203 Mei Ding address. But none of the documents you submitted nor the letters you submitted from your relatives or your father, nor your own asylum application or statement indicate the 203 Mei Ding address whatsoever. So, do you know why that is?
>
> Lin: I do not know.

See id. at 142.

During questioning by the IJ, Lin could not explain why his asylum application and his father's statement indicated that he had obtained the Falun Gong materials he eventually distributed from the internet rather than from his friend, Qiu, as he had

___

[4] "Mei Ding" is the spelling that appears in the hearing transcript, and is the spelling used by the IJ in his oral decision. We note that the spelling of this address in the actual arrest warrant is "203 Maiding." A.R. 280. Insofar as the Board of Immigration Appeals used the "Maiding" spelling, so shall we throughout this opinion.

testified, see id. at 148, or why his asylum application indicated that he handed a pamphlet to a friend of his parents who was male, given that he testified that the person he handed the materials to was his aunt, see id. at 150-51. With respect to his asylum application statement that he had been beaten while detained by the police, and his omission from his testimony of having been beaten while he was detained, Lin answered that he omitted any reference in his testimony to the beating because the beating left no injuries and thus no one would have believed him. See id. at 149-50.

The IJ issued a decision at the end of the merits hearing, concluding that Lin did not testify credibly, and, therefore, he did not meet his burden to show past persecution or a well-founded fear of future persecution. Accordingly, Lin did not qualify for asylum or withholding of removal. The IJ found Lin incredible for several reasons. First, and importantly, Lin failed to account for the inconsistency between his testimony, asylum application, and Household Registry on the one hand, and the arrest warrant on the other, with respect to his address at the time Chinese authorities allegedly were looking for him. He gave prior addresses of 121 Houdong Village in Changle City, his parents' home, and 128 Mei Ding[5] village in the Chunshan District of Fuzhou City, but he never once mentioned living at the 203 Maiding address. And yet, the IJ noted, the arrest warrant was offered specifically to corroborate his claim of persecution. The IJ credited

_____

[5] This too appears to be a phonetic spelling. Because the "128" address was only mentioned during Lin's testimony, the phonetic spelling is all that appears in the Administrative Record.

7

government counsel's thorough cross-examination for exposing this "glaring problem." App. 35.

Second, and also importantly, the IJ concluded that Lin failed to provide a reasonable explanation for his inconsistent testimony with respect to whether he left China several days, or more than a year, after his alleged trouble with the authorities in June of 2004. App. 37. His relative's affidavit indicated that the arrest warrant was served on June 15, 2004, but Lin's father did not ask for a fake passport until July 2, 2005. See id. In his asylum application, Lin stated that he left China in July of 2005, but on cross-examination by the government he was confused about when he left China. See id. at 37-38. Ultimately, Lin did not properly account for the time between June of 2004 and July of 2005.

The IJ found other inconsistencies of lesser importance as follows. Lin gave inconsistent statements about whether he had obtained his Falun Gong materials from the internet by himself or from his friend, Qui; his father's statement did not mention that Lin had been beaten during his detention nor did Lin mention it in his testimony; and he gave in his asylum application the gender of the person pursued by the police on June 12, 2004 as male, but in his testimony he stated that the person he met on the public square was his aunt. Last, the IJ denied the CAT claim, finding that Lin's claims of past and possible future harm lacked credibility, and he failed to provide any additional evidence showing that it was more likely than not that he would be tortured in China. Lin's removal to

8

China was ordered.

Lin appealed to the Board of Immigration Appeals, contesting the IJ's adverse credibility determination. On November 21, 2008, the Board dismissed the appeal, concluding that Lin failed to establish eligibility for asylum or withholding of removal. Applying a clearly erroneous standard to the IJ's credibility determination, see 8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous"), the Board concluded that the two primary inconsistencies cited by the IJ concerning Lin's address in China when he allegedly was being sought by the authorities, and the inconsistent dates he provided with respect to when he left China for the United States, constituted significant evidence of a lack of credibility. The Board further agreed that Lin's explanation for the home address inconsistency – that the address on the arrest warrant was ten years old – was not reasonable, especially because it conflicted with his Household Registry and his asylum application, which affirmatively listed the 121 Houdong Village address for all periods from 1981 to 2005. Lin's explanation for the inconsistent dates provided with respect to when he left China was muddled and inadequate. Having found that these two inconsistencies were sufficient to support the IJ's adverse credibility determination, the Board did not address the other inconsistencies cited by the IJ. The Board also affirmed the IJ's rejection of Lin's CAT claim. Lin has timely petitioned for review of the Board's

9

decision.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where, as here, the Board adopts specific aspects of the IJ's analysis and factfinding in support of its conclusion, we review the decisions of both the Board and the IJ. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). Adverse credibility determinations are reviewed under the same standard, and are afforded substantial deference where they are grounded on evidence in the record and where the agency provides specific, cogent reasons for its determination. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003).

Before the enactment of the REAL ID Act of 2005, an adverse credibility determination could be based on inconsistencies only if the inconsistencies went to the heart of the claim. See Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 189 (3d Cir. 2007). Inconsistent statements and contradictory evidence constituted cogent reasons that could support an adverse credibility finding, see Dia v. Ashcroft, 353 F.3d 228, 249-50 (3d Cir. 2003) (en banc), but minor inconsistencies and minor admissions that revealed nothing

10

about an asylum applicant's fear for his safety were not an adequate basis for an adverse credibility determination, see Gabuniya v. Att'y Gen. of U.S., 463 F.3d 316, 322 (3d Cir. 2006).

As the agency noted here, a new REAL ID Act standard applies to Lin's claim, because he filed his asylum application after May 11, 2005. The asylum statute now provides that "credibility determinations may be made 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.'" Chukwu, 484 F.3d at 189 (quoting INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii)). We have not yet had occasion to apply the new standard and we need not do so here, because the agency's adverse credibility determination in Lin's case is supported by substantial evidence even under the pre-REAL ID Act standard that prohibits basing one on minor inconsistencies, see Gabuniya, 463 F.3d at 322. Substantial evidence supports the IJ's and Board's conclusions that Lin's claim lacked credibility because of two significant, non-minor inconsistencies between his testimony and documentary evidence with respect to his address in China when the authorities were allegedly pursuing him, and his contradictory accounts of when he fled China. Lin has failed to demonstrate that the record evidence compels reversal of the agency's conclusion. 8 U.S.C. § 1252(b)(4)(B).

Under INA § 208(b), the Attorney General has the discretion to grant asylum to "refugees." 8 U.S.C. § 1158(b); see also Immigration & Naturalization Serv. v. Cardoza-

Fonseca, 480 U.S. 421, 428 n.5 (1987). Section 101(a)(42)(A) of the INA defines a "refugee" as a person unable to return to his country of "nationality . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ...." 8 U.S.C. § 1101(a)(42)(A). The alien bears the burden of proof of establishing that he is a refugee and that he has suffered past persecution or has a well-founded fear of persecution. See 8 C.F.R. § 1208.13(a); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). If past persecution is established, then the alien is presumed to have a well-founded fear of persecution. See 8 C.F.R. § 1208.13(b)(1); Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). In the absence of evidence of past persecution, the alien must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and he must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id.

The more exacting withholding of removal standard requires an alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Cardoza-Fonseca, 480 U.S. at 430 ("would be threatened" standard has no subjective component). In making out a CAT claim, the burden of proof is on the alien to establish that it is more likely than not that he would be

tortured in his native country.  8 C.F.R. § 1208.16(c)(2).

Lin claimed persecution on account of imputed political opinion, but he failed to establish through "specific facts and credible testimony," see Abdille, 242 F.3d at 482, that he was eligible for asylum as a refugee on this basis.  The purported warrant for his arrest, because it is dated June 14, 2004, was potentially persuasive evidence corroborating his testimony that he was arrested on June 9, 2004 and released the same day, and that he again returned to the public square to distribute Falun Gong literature on June 12, 2004.  The arrest warrant certainly was intended by Lin to provide critical evidence of his case of persecution.  But it indicates his address at the time the Chinese authorities were looking for him as 203 Maiding in Fuzhou City, and yet, in his testimony, asylum application, and Household Registry, Lin gave prior addresses of 121 Houdong Village in Changle City (his parents' home), and 128 Mei Ding village in Fuzhou City (where he was renting at a time when he was employed), and never once mentioned living at the 203 Maiding address.  His explanation that he lived at the address ten years ago is insufficient.  The explanation is flatly contradicted by his asylum application and Household Registry, just as the Board and the IJ noted, and the explanation does not make sense of the fact that he allegedly gave Chinese authorities, at the time he was detained, an address that was ten years out of date.  It also makes no sense that the authorities had this address as his address in their official records.

Lin also gave conflicting dates about when he fled China.  Although he stated in

13

his asylum application that he left China on July 5, 2005, and the letter from his relative indicated that he requested a fake passport on July 2, 2005, App. 260, Lin testified during direct examination that, after his second encounter with the police on June 12, 2004, he left China on June 17, 2004. He then resided in Taiwan for approximately one year before arriving in the United States in July of 2005. When confronted with the inconsistency during cross-examination, Lin contradicted his earlier testimony by stating that he only stayed in Taiwan for several days. His explanation for this significant discrepancy concerning his whereabouts from mid-June of 2004 through early July of 2005 – that his mind went blank – is inadequate.

Lin has argued on appeal that the agency's adverse credibility determination was defective because the two inconsistencies cited by the Board "were not directly linked to the heart of the claim." See Petitioner's Brief, at 15. We are not persuaded by this argument. The inconsistency noted by the IJ and the Board concerning where Lin was living when the Chinese authorities allegedly were looking for him, is, under the circumstances of his having submitted the arrest warrant as corroborative evidence of his claim of persecution, not minor. The inconsistency noted by the IJ and the Board concerning how long Lin remained in China following his arrest and the issuance of the arrest warrant has an even closer connection to his claim, because the length of time he remained in China after he allegedly was persecuted indicates his level of concern about his circumstances. Inconsistencies that reveal something about an asylum applicant's fear

14

for his safety are, under the pre-REAL ID Act standard, an adequate basis for an adverse credibility finding.  See Gabuniya, 463 F.3d at 322.

We do not read the Board's or IJ's decisions to hold that the two inconsistencies noted were minor and did not go to the heart of Lin's claim of persecution, notwithstanding that both the Board and the IJ purported to apply the REAL ID Act standard for judging an alien's credibility.  The Board stated without discussion that "some of these inconsistencies may not relate to the heart of the claim," which is hardly conclusive of the question.  The IJ similarly did not specifically address the question of whether the two inconsistencies went to the heart of Lin's claim.  However, the IJ tellingly concluded that Lin's inconsistency regarding where he was for one year after the warrant was issued for his arrest was "critical," noting that his failure to offer a reasonable explanation for what occurred during the year when he supposedly was avoiding arrest was "extremely troublesome."  App. 38.  The Board agreed with the IJ that Lin's "muddled explanation [was] insufficient to explain this significant inconsistency."  App. 4.

Because Lin was found incredible, he could not demonstrate past persecution or a well-founded fear of persecution in China on account of a protected ground.  See 8 U.S.C. § 1101(a)(42); Zubeda, 333 F.3d at 469.  Because he failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal.  Cardoza-

15

<u>Fonseca</u>, 480 U.S. at 430-32.  In addition, the record does not compel a conclusion that Lin met his burden of establishing that it is more likely than not that he will be tortured upon his return to China, 8 C.F.R. § 1208.16(c)(2).

For the foregoing reasons, we will deny the petition for review.